ERNESTO ESTUPINAN-GONZALEZ,

    Movant,

vs.                                    <u>REPORT OF</u>
                                       <u>MAGISTRATE JUDGE</u>
UNITED STATES OF AMERICA,

    Respondent.

_____/


# I. <u>Introduction</u>

This matter is before the Court on the movant's *pro se* motion to vacate, filed pursuant to 28 U.S.C. §2255, attacking the constitutionality of his convictions and sentences for conspiracy to operate and embark on a semi-submersible vessel, without nationality, with intent to evade detection and operating and embarking on a semi-submersible vessel, without nationality, with intent to evade detection, entered following a guilty plea in **case no. 16-20060-Cr-Scola.**

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

Because summary dismissal is warranted and the movant is not entitled to post-conviction relief, no order to show cause has been issued in the instant case, therefore, the respondent was not

required to file a response thereto. See e.g., Broadwater v. United States, 292 F.3d 1302, 1303-04 (11th Cir. 2002) (a district court has the power under Rule 4 of the Rules Governing Section 2255 Cases to summarily dismiss a movant's claim for relief so long as there is a sufficient basis in the record for an appellate court to review the district court's decision); see also, Termitus v. Sec'y, Dep't of Corr's, 667 Fed.Appx. 303 (11 Cir. June 23, 2016) (unpublished); Hillary v. Sec'y, Dep't of Corr's, 294 Fed.Appx. 569, 572 (11 Cir. Sept. 26, 2008) (unpublished).

The court has reviewed the §2255 motion (Cv-DE#1), the Presentence Investigation Report ("PSI"), the Statement of Reasons ("SOR"), along with all pertinent portions of the underlying criminal file,[1] including the change of plea (Cr-DE#94) and sentencing (Cr-DE#95) transcripts.

## II. Claims

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 519 (1972), the movant raises the following three grounds for relief:

    1.    He was denied effective assistance of counsel, where his lawyer failed to ask for a downward departure based on his status as a deportable alien. (Cv-DE#1:4).

    2.    The facility where he is confined is violating the

---

[1] The court may take judicial notice of its own records in habeas proceedings, McBride v. Sharpe, 25 F.3d 962, 969 (11th Cir. 1994), Allen v. Newsome, 795 F.2d 934, 938 (11th Cir. 1986), together with the state records, which can be found on-line. See Fed.R.Evid. 201; see also, United States v. Glover, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)(citing United States v. Rey, 811 F.2d 1453, 1457 n.5 (11 Cir. 1987)(finding the district court may take judicial notice of the records of inferior courts).

Second Chance Act and movant's constitutional rights to bail because it does not have an immigration hearing program, as required by law. (Cv-DE#1:6).

3.  He was denied effective assistance of counsel, where his lawyer failed to raise certain issues at sentencing, including the claims raised herein, and the fact that the movant "was not guilty of anything" because no drugs were found and he was not in a "submersible or submarine," but rather on a "sinking ship. (Cv-DE##1:7-8).

## III.  <u>Factual Background and Procedural History</u>

### A.  <u>Facts of the Offense</u>

The government's factual proffer at the Rule 11 change of plea proceeding reveals that on January 7, 2016, while on routine patrol, a maritime patrol aircraft detected a self-propelled semi-submersible[2] traveling north in international waters and upon the high seas, approximately 310 nautical miles south of the Mexican-Guatemalan border. (Cr-DE#94:4-5). Upon further inquiry from the court, the government stated that the semi-submersible was located several hundred miles off the coast of Guatemala, south-southwest. (Id.:12). Law enforcement officials suspected the vessel was trafficking illegal drugs. (Id.:5). As a result, the United States Coast Guard Cutter *Northland*, located approximately 260 nautical miles northeast of the sighted vessel, was notified and diverted in order to investigate. (Id.). Once in range of the semi-submersible vessel, the *Northland* launched an "over-the-horizon" ("OTH")[3] vessel

_____

[2]A "semi-submersible" is a vessel that is mostly underwater. (Cr-DE#94:5).

[3]An OTH vessel is a small, United States Coast Guard cutter vessel, usually carrying four to six law enforcement officials on board, and are like an inflatable, and able to travel at high rates of speed. (Id.:5-6).

and a helicopter to intercept and investigate the semi-submersible vessel. (Id.:5).

At the time, the semi-submersible had no navigational lights, no headlights or signals, no flags, bore no registration numbers or other markings, and its color blended with the ocean's surface. (Id.:7,14). When the OTH and helicopter arrived on the scene, it became apparent that crew members aboard the semi-submersible were scrambling to leave the vessel as it was rapidly sinking. (Id.:7). At the time, the semi-submersible was "mostly sunk," with only approximately 8 to 10 feet of the bow[4] remaining above the water line. (Id.). In response to inquiry from the Coast Guard, one crew member aboard the semi-submersible confirmed that it was, in fact, sinking. (Id.:8).

On board the semi-submersible were the movant, together with his codefendants, Ramon Reascos-Reina ("Reina"), Alexander Ramos-Castillo ("Castillo"), and Jose Rosario Segura-Balentierra ("Balentierra"). Given the state of the semi-submersible, the movant and the others were taken aboard the U.S. Coast Guard Vessel. (Id.). One crew member represented that he was a Colombian national and that the vessel was also registered in Colombia. (Id.:8). As a result, law enforcement contacted the Colombian government, but they could neither confirm nor refute that the vessel was registered in Colombia. (Id.:9). As a result, U.S. Coast Guard officials determined that the vessel was without nationality, and thus subject to United States jurisdiction. (Id.). After next determining that the semi-submersible was unsafe, U.S. Coast Guard officials requested and then received permission to use gunfire on

---

[4]It was stated that the semisubmersible was between 30 to 40 feet long. (Id.:8).

4

the vessel in an effort to release its contents. (Id.). Thereafter, some debris, including two GPS devices, emerged from the sunken vessel, but no contraband was recovered. (Id.).

Meanwhile, on January 18, 2016, the U.S. Coast Guard transferred custody of the movant and his codefendants to United States law enforcement officials, who then escorted the movant and the others to Miami-Dade County, Florida, where they first entered the United States. (Id.:9).

Based on the foregoing, the government proffered it would have established, beyond a reasonable doubt, as to Counts 1 and 2 of the Indictment, charging a violation of 18 U.S.C. §2285(a)-(b) and §2, that on or about January 7, 2016, while aboard a vessel, the movant and his codefendants conspired to operate by any means and embarked in a semi-submersible vessel without nationality, navigating into, through, and from waters beyond the outer limits of the territorial seas of a single country, in the lateral limit of that country's territorial sea with an adjacent country, with the intent to evade detection. (Id.:9-10). The government also stated it was their position that the movant and his codefendants "scuttled" the submersible, meaning they were sinking the vessel. (Id.). The government also proffered that the movant and the others were subject to the jurisdiction of the United States, with Miami-Dade County, in the Southern District of Florida, being the district and point of entry for the movant and his codefendants. (Id.:9-10).

The movant objected to the government's proffer solely to the extent that the government had represented that the submersible was "sinking rapidly." (Id.:16-18). Defense counsel argued that whether the vessel was sinking or not was an issue for sentencing, and not

an element of the substantive offense. (Id.:17). Movant's counsel also disputed the government's proffer that the movant and the others were "scurrying about" before law enforcement officials arrived. (Id.:18-19). Counsel explained that movant and the others were on the dock when the OTH crew arrived, at which time the movant and his codefendants were ordered to get in the water and then board the OTH. (Id.:19). The movant and his codefendants complied, jumping off the submersible and then getting onto the OTH. (Id.). Later, however, movant's counsel again reiterated that the movant objected to the factual proffer to the extent it suggested that the submersible was sinking, advising the court that it wanted to preserve the issue, arguing that the fact was not necessary to support the offense of conviction, but was rather a sentencing issue, that would require proof from the government. (Id.:19-20).

### B.  Indictment, Pre-trial Proceedings, Conviction, Sentencing, and Direct Appeal

Movant was charged and then pleaded guilty, without the benefit of a written or oral plea agreement, to the Indictment, charging him with conspiracy to operate and embark on a semi-submersible vessel without nationality, with intent to evade detection, in violation of 18 U.S.C. §2285(a)-(b) (Count 1), and operating and embarking on a semi-submersible vessel without nationality, with intent to evade detection, in violation of 18 U.S.C. §2285(a)-(b) (Count 2). (Cr-DE#s87,94).

On June 21, 2016, a change of plea proceeding, pursuant to Fed.R.Cr.P. 11, was conducted by the district court. (Cr-DE#94). After being given the oath, the movant agreed to the government's factual proffer, with the exceptions noted previously in this

Report. He then acknowledged that if he answered any questions falsely, it could be used against him in a separate prosecution for perjury or making a false statement. (<u>Id</u>.:21). Movant then provided background information, including his age and education. (<u>Id</u>.:21-22). He indicated that he was not able to read and write in English, but was able to do so in Spanish. (<u>Id</u>.:22). Although not given the oath, when asked by the court if the Indictment and other legal documents were translated for the movant, defense counsel explained that his office prepared written translations of various reports and written discovery provided by the government, which was then given to the movant. (<u>Id</u>.:23). Counsel also stated that he is fluent in English and Spanish, and would translate other parts of discovery during discussions with the movant. (<u>Id</u>.). When the court asked the movant whether counsel's representations were correct, the movant responded in the affirmative. (<u>Id</u>.:23).

Movant denied ever being treated for any mental illness or addiction to alcohol, narcotics, or prescription drugs. (<u>Id</u>.:25). He also denied being under the influence of any drugs, alcohol, narcotics, or medications at the time of the Rule 11 proceedings, nor within the past 48 hours, but for Mylanta and aspirin. (<u>Id</u>.). Movant explained that he was taking Mylanta for acid indigestion and aspirin for his blood circulation. (<u>Id</u>.:26). Movant affirmed that neither individually nor taking the medications together would affect his ability to understanding the nature of the Rule 11 proceedings. (<u>Id</u>.).

Movant confirmed that he had reviewed and discussed the charges set forth in the Indictment with counsel, and the government's evidence, as well as, any possible defenses. (<u>Id</u>.:26). Movant also discussed with counsel about whether he should plead

guilty or proceed to trial. (Id.:27). Movant represented that he was satisfied with counsel's representation and the advice provided. (Id.). Movant denied that there was anything about counsel's representation or advice that he was not satisfied with. (Id.). Movant understood that no formal written plea agreement had been entered between the movant, his counsel, and the government regarding how the case should be resolved. (Id.:28). In fact, the government and defense counsel both represented that there was no informal or oral agreement between the parties. (Id.:28). Movant understood that, in fact, he was pleading guilty as charged, without the benefit of a even an informal or oral agreement between the parties. (Id.). He denied being made any promises in order to change his plea. (Id.:29). He also denied being forced, threatened, or coerced into changing his plea. (Id.). Movant affirmed that he was pleading guilty because he was, in fact, guilty. (Id.).

Next, movant understood that as to Count 1, he was pleading guilty to Count 1, a conspiracy, charging him with an agreement between one or more persons to embark in any semi-submersible vessel without nationality, navigating through waters beyond the outer limit of the territorial seas of a single country, with the intent to evade detection; and, Count 2, charging him with the substantive crime of operating a semi-submersible vessel without nationality, navigating through waters beyond the outer limit of the territorial seas of a single country, with the intent to evade detection. (Id.:29-30). Movant understood that he faced as to each count of conviction a statutory maximum of 15 years imprisonment, to be followed by a term of up to 3 years supervised release. (Id.:30).

Movant acknowledged that the sentence was going to be

calculated pursuant to the advisory guidelines, which the court will consider, and that the sentence imposed may be more or less severe than that called for under the guidelines. (Id.:31-32). Movant understood that any estimate provided as to the ultimate sentence to be imposed under the guidelines, are just that--an estimate, and is not binding on the court, and the movant would not be able to withdraw his plea as a result of the sentence imposed. (Id.:32).

Next, the movant understood that if the court accepted the plea, he would be adjudicated guilty of two felony offenses, and if he was not a U.S. citizen, there were adverse collateral consequences, including the fact that he would be removed or deported from the United States, and not allowed to return to the United States or later become a U.S. citizen. (Id.:33). Movant also understood that he would lose valuable civil rights, including the right to vote, hold public office, serve on a jury, and possess a firearm. (Id.). Regarding the waiver of his constitutional rights, movant understood that by pleading guilty to the charges, he would be waiving the right to a trial by jury, to confront and cross-examine government witnesses, to compel witnesses to testify on his own behalf at trial, to review evidence and to assist in his defense. (Id.:34). He also understood he would be waiving the right to testify in his own defense at trial, and that if he chose not to testify, it could not be used against him, that he was entitled to the presumption of innocence, and if convicted at trial, he could appeal to a higher court. (Id.).

The court then asked the movant whether he agreed that, back on January 7, 2016, and for some period of time thereafter, the movant and his codefendants agree with each other and perhaps with

other unidentified individuals to operate a semi-submersible vessel without nationality, navigating it beyond the outer limits, in the waters of the outer limits of the territorial sea of a single country, and a lateral limit of that country's territorial sea with an adjacent country with the intent to evade detection; and, was the movant and the others on a semi-submersible vessel on January 7, 2016, located well in excess of 200 miles out in the ocean, 200 miles beyond any country's territorial limits, and was the vessel being navigated without nationality, meaning without flying a country's flag. (Id.:35).

The court further inquired whether the movant agreed that if the case went to trial, the government could prove beyond a reasonable doubt, that when it contacted Colombia, they were unable to confirm that the semi-submersible vessel was registered in Colombia, and there was no evidence of any connection to any other country, especially given the fact that the vessel had no lights, or other markings, was painted to avoid detection, was being operated with the intent to avoid detention on January 7, 2016. (Id.). The court also inquired if the movant agreed he had been arrested by U.S. officials while he was aboard the vessel, which was sinking at the time. (Id.). The movant did not dispute any of the court's representations above. (Id.). When asked how he wished to plead to Counts 1 and 2 of the Indictment, guilty or not guilty, the movant responded, "Guilty." (Id.:36).

Thereafter, the court found the movant fully competent and capable of entering into an informed plea, being aware of the nature of the charges and the consequences of the plea, that his plea was knowing and voluntary, supported by an independent basis in fact, containing each of the essential elements of the offenses.

(Id.:36-37). The court then accepted the movant's plea and adjudicated him guilty on Counts 1 and 2 of the Indictment. (Id.:37).

Prior to sentencing, a PSI was prepared which determined that, because the offenses involved a violation of 18 U.S.C. §2285, pursuant to U.S.S.G. §2X7.2, the base offense was set at a level 26. (PSI ¶11). No specific offense characteristics or adjustments for movant's role in the offenses were given. (PSI ¶¶12,14). Two levels were deducted from the base offense level based on movant's acceptance of responsibility prior to trial, resulting in a total adjusted offense level 24. (PSI ¶¶18-19).

Next, the probation officer determined that the movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶22). Based on a total offense level 24 and a criminal history category I, the guideline imprisonment range was set at 51 months at the low end and 63 months at the high end of the guideline range. (PSI ¶47). Statutorily, the movant faced as to each count of conviction a maximum term of 15 years imprisonment, for violation of 18 U.S.C. §2285(a). (PSI ¶46).

Prior to sentencing, the movant filed objections to factual information contained in the PSI, which were corrected and resolved by the probation officer prior to sentencing. (PSI Addendum). The government, however, filed objections to the PSI, claiming that an 8-level enhancement, pursuant to U.S.S.G. §2X7.2(b)(1)(C), was warranted for sinking the vessel. (PSI Addendum). The probation officer responded that the government had failed to provide any specific information regarding any video of the movant and his codefendants sinking the vessel or any cooperating witness

testimony. (<u>Id</u>.). Therefore, the probation officer concluded that, based on the information provided by the government, there was insufficient evidence for probation to conclude that the movant or his codefendants sank the vessel. (<u>Id</u>.). Consequently, the probation officer stated that the issue remained unresolved prior to sentencing. (<u>Id</u>.).

On **September 30, 2016,** the movant appeared for sentencing. (Cr-DE#95). At that time, the government called an expert witness, Erik G. Holm, employed by the U.S. Coast Guard, Investigative Service out of Alameda, California, as an assistant special agent in charge of the Coast Guard Investigative Service, Pacific Region to testify regarding the semi-submersible the movant was aboard. (<u>Id</u>.:11-12). Regarding the semi-submersible vessel, Holm explained that typically after that type of vessel is constructed and then field tested, it is then weighed down properly by often putting lead, gravel, sandbags, or any number of other items in the bottom of the hold, up forward and in other locations, so that the vessel's profile becomes difficult to detect in the wave clutter. (<u>Id</u>.:28). Holm also testified that he had previously been qualified in federal court to testify as an expert in semi-submersibles. (<u>Id</u>.:32). After reviewing the government's evidence in this case, Holm opined that, based on the established "MO" for "SPSS crewmembers to scuttle their vessels," the movant and his codefendants would certainly have a motive to do that. (<u>Id</u>.:45). Holm further stated that the evidence suggested the movant and the others were on an illicit conveyance, without any legitimate purpose, since they did not turn towards shore or attempt to reach shore as they would have if they were having a legitimate mechanical problem. (<u>Id</u>.).

Holm believed it was very coincidental and improbable that the vessel began to sink within five minutes of when the Coast Guard arrived, as opposed to the 9 days prior thereto, when they were operating under a very typical profile for SPSS operation in terms of speed and route. (Id.). In making the determination that the movant and the others scuttled the vessel, Holm factored in the fact that the vessel was traveling from a common source location for cocaine, and transiting through an area that would make them less likely to fall under law enforcement scrutiny, whether from the United States, Colombia, or any other nation patrolling the area. (Id.:46).

Although Holm confirmed reviewing videos of the interdiction, he testified that he was unable to observe any scuttling valves on the vessel. (Id.:46-47). According to Holm, the semi-submergible appeared level from the Coast Guard helicopter, with the stern--rear of the vessel elevated only minutes before the boarding team arrived on the scene. (Id.:53). However, within minutes before the Coast Guard boarding team arrived, the stern was increasingly low to the rear, and the rate of speed at which the vessel was taking on water, it could have sank long before the Coast Guard arrived. (Id.:53). Holm explained that it is a very common practice for individuals like the movant to wait until they see law enforcement before pulling the valves and scuttling the vessel. (Id.:54). Typically the individual aboard a vessel who creates the condition for flooding the vessel would typically be the last individual to exit the vessel. (Id.:56).

The court then heard a proffer from movant's counsel regarding the testimony of the movant's expert, a physical engineer, and the fact that it was uncontroverted that the government had not

13

demonstrated that the movant nor any of his codefendants intentionally scuttled the vessel. (Id.:56-86). In fact, counsel suggested that the vessel could have taken on water rapidly due to a malfunctioning bilge pump, which would have caused the vessel to start sinking. (Id.).

After hearing the defense's proffer, the court determined that the government's expert, while qualified in terms of semi-submersible vessels, is not an expert in terms of engineering, and found that it was possible the semi-submersible could have been scuttled, but there are too many reasons why the same events could have happened. (Id.:86). As such, the court found it is "just too speculative" to find, based upon the evidence, that the vessel was intentionally scuttled by the movant or his codefendants. (Id.:86). Therefore, the government's request for the upward enhancement to the base offense level was overruled. (Id.).

Regarding the third point off for acceptance of responsibility, the government stated it was not going to recommend the additional one point reduction. (Id.:87). As a result, the court found that the base offense level as to the movant was a level 26, with a 2-level reduction for acceptance of responsibility, resulting in a total adjusted offense level 24, and a criminal history category I. (Id.:87). Based on a total offense level 24, and a criminal history category I, the court found movant was facing 51 to 63 months imprisonment. (Id.:88). The government, however, requested an upward departure to 108 months imprisonment. (Id.:88). The defense moved for a downward variance, to at least 46 months, since the government was unwilling to offer the additional one-point reduction to the base offense level for timely acceptance of responsibility. (Id.:92).

After hearing from the movant in support of allocution, the court indicated it had considered the statements of all parties, the PSI containing the advisory guidelines, as well as, the statutory factors set forth in 18 U.S.C. §3553(a). (Id.:92). The court found that the offenses of conviction were "very serious," and that the vessel contained "some illicit product on it, which is the only reason people would be out there, in the middle of the ocean, with a sinking boat, due to mechanical problems or some other reason the government was unable to prove. (Id.:93). In light of all of those circumstances, the court then sentenced the movant to the low end of the applicable guideline range, imposing a total of 51 months imprisonment on each count of conviction, to run concurrently with each other. (Id.). Upon release from imprisonment, the court ordered that the movant be placed on 3 years supervised release. (Id.). The Judgment was entered on the docket on **September 30, 2016.** (Cr-DE#87). No direct appeal was prosecuted. (Cv-DE#1:1).

Consequently, for purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case become final on **Friday, October 14, 2016,** fourteen days after the entry of the judgment, when time expired for filing a notice of appeal.[5] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final,

---

[5]Where, as here, a defendant does not pursue a direct appeal, her conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). On December 1, 2009, the time for filing a direct appeal was increased from 10 to 14 days days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). Moreover, now every day, including intermediate Saturdays, Sundays, and legal holidays are included in the computation. See Fed.R.App.P. 26(a)(1).

or no later than **Monday, October 16, 2017.**[6] <u>See</u> <u>Griffith v.</u>
<u>Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>see also</u>, <u>See</u> <u>Downs v.</u>
<u>McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008)(<u>citing</u> <u>Ferreira v.</u>
<u>Sec'y, Dep't of Corr's</u>, 494 F.3d 1286, 1289 n.1 (11th Cir.
2007)(this Court has suggested that the limitations period should
be calculated according to the "anniversary method," under which
the limitations period expires on the anniversary of the date it
began to run); <u>accord</u> <u>United States v. Hurst</u>, 322 F.3d 1256,
1260-61 (10th Cir. 2003); <u>United States v. Marcello</u>, 212 F.3d 1005,
1008-09 (7th Cir. 2000)). Applying the anniversary method to this
case means movant's limitations period expired on **October 16, 2017.**

Meanwhile, on **September 25, 2017,** the movant returned to this
court filing his initial motion to vacate, pursuant to 28 U.S.C.
§2255, after he signed and then handed it to prison authorities for
mailing in accordance with the mailbox rule.[7] (Cv-DE#1:13). Absent
evidence to the contrary, it is presumed, for purposes of this

---

[6]Under <u>Fed.R.Civ.P.</u> 6(a)(1), "in computing any time period specified in ...
any statute that does not specify a method of computing time ... [the court must]
exclude the day of the event that triggers the period[,] count every day,
including intermediate Saturdays, Sundays, and legal holidays[, and] include the
last day of the period," unless the last day is a Saturday, Sunday, or legal
holiday. Where the dates falls on a weekend, the Undersigned has excluded that
day from its computation.

As applied here, the movant's one-year limitations period is due to expire
on Saturday, October 14, 2017. Therefore, the actual expiration date becomes
Monday, October 16, 2017.

[7]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed
filed on the date it is delivered to prison authorities for mailing." <u>Williams</u>
<u>v. McNeil</u>, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); <u>see</u> <u>Fed.R.App.</u> 4(c)(1) ("If
an inmate confined in an institution files a notice of appeal in either a civil
or a criminal case, the notice is timely if it is deposited in the institution's
internal mail system on or before the last day for filing."). Unless there is
evidence to the contrary, like prison logs or other records, a prisoner's motion
is deemed delivered to prison authorities on the day he signed it. <u>See</u> <u>Washington</u>
<u>v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Adams v. United States</u>,
173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed
and delivered to prison authorities for mailing).

Report, that the motion was filed on the date it was signed by the petitioner. (Cv-DE#1:13).

## IV.   **Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). It is also well-established that a §2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . "

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's

claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." <u>Frady</u>, 456 U.S. at 152; <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001); <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Lynn</u>, 365 F.3d at 1232-33 (<u>quoting</u> <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)).

If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or Presentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>Frady</u>, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment). Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro v.</u>

<u>Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). <u>See also</u> <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

In addition, the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. <u>United States v. Dean</u>, 635 F.3d 1200, 1209-1210 (11th Cir. 2011)(<u>citing</u> <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005)); <u>see also</u>, <u>United States v. Bostic</u>, 645 Fed.Appx. 947, 948 (11th Cir. 2016)(unpublished).[8] The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. <u>United States v. Talley</u>, <u>supra</u>.

## A. <u>Guilty Plea Principles</u>

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient

---

[8]"Unpublished opinion are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). <u>See also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002); <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985); <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 n.13 (1976).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005)(table); <u>United States v. Mosley</u>, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, <u>United States v. Patti</u>, 337 F.3d 1317, 1320 (11th Cir. 2003), <u>cert. den'd</u>, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986).

To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>Id.</u>; <u>see also</u>, <u>United States v. Frye</u>, 402 F.3d 1123, 1127 (11th Cir. 2005)(*per*

*curiam*); <u>United States v. Moriarty</u>, 429 F.3d 1012 (11th Cir. 2005).[9]

In other words, a voluntary and intelligent plea of guilty made by an accused person must therefore stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. <u>See</u> <u>Santobello v. New York</u>, 404 U.S. 257 (1971).

## B.  <u>Ineffective Assistance of Counsel Principles</u>

Even if movant attempts to suggest in objections or otherwise that counsel rendered ineffective assistance, this Court's analysis would begin with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's

---

[9]In <u>Moriarty</u>, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

<u>Id</u>.

performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984); <u>Harrington v. Richter</u>, 562 U.S. 86, 104, 131 S.Ct. 770, 788 (2011). <u>See also</u> <u>Premo v. Moore</u>, 562 U.S. 115, 121-22, 131 S.Ct. 733, 739-740 (2011); <u>Padilla v. Kentucky</u>, 559 U.S. 356, 367, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). If the movant cannot meet one of <u>Strickland</u>'s prongs, the court does not need to address the other prong. <u>Strickland</u>, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of <u>Strickland</u> if the defendant makes an insufficient showing on one of the prongs). <u>See also</u> <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004); <u>Brown v. United States</u>, 720 F.3d 1316 (11th Cir. 2013).

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008)(citations omitted); <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000). With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); <u>Allen v. Sec'y, Fla. Dep't of Corr's</u>, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

<u>Lockhart</u>, 506 U.S. at 369 (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 687).

In the context of a guilty plea, the first prong of <u>Strickland</u> requires petitioner to show that the plea was not voluntary because he/she received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he/she would have entered a different plea. <u>Hill</u>, 474 U.S. at 56-59. If the petitioner cannot meet one of <u>Strickland</u>'s prongs, the court does not need to address the other prong. <u>Dingle v. Sec'y for Dep't of Corr's</u>, 480 F.3d 1092, 1100 (11th Cir.), <u>cert. den'd</u>, 552 U.S. 990 (2007); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir.), <u>reh'g and reh'g en banc den'd by</u>, <u>Holladay v. Haley</u>, 232 F.3d 217 (11th Cir.), <u>cert. den'd</u>, 531 U.S. 1017 (2000).

However, a defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as representation of defense counsel and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir.), <u>cert. den'd</u>, 513 U.S. 864 (1994); <u>United States v. Niles</u>, 565 Fed.Appx. 828 (11th Cir. May 12, 2014)(unpublished).

A criminal defendant is bound by his/her sworn assertions and cannot rely on representations of counsel which are contrary to the advice given by the judge. <u>See</u> <u>Scheele v. State</u>, 953 So.2d 782, 785 (Fla. 4 DCA 2007)("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal

ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

Moreover, in the case of alleged sentencing errors, the movant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

Furthermore, a §2255 movant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012); Garcia v. United States, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991), cert. den'd Tejada v. Singletary, 502 U.S. 1105 (1992); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990)(citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d

136 (1977)); <u>United States v. Ross</u>, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (<u>quoting</u> <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

## V. <u>Threshold Issues-Timeliness</u>

As narrated previously, the movant filed this §2255 motion on **September 25, 2017,** less than one year after his conviction became final on **October 16, 2016.** Since this motion was filed shortly before expiration of the one-year limitations period, it was timely instituted, and review of the merits follows.

## VI.  Discussion

### A.  §2241 Petition

It is first worth mentioning that the movant is attempting to raise in this §2255 motion, a claim that is more properly brought as a federal habeas corpus petition, filed pursuant to 28 U.S.C. §§2241-2243. Specifically, in **claim 2**, movant asserts that the facility where he is confined is violating the Second Chance Act and movant's constitutional right to bail because it does not have an immigration hearing program, as required by law. (Cv-DE#1:6).

Federal habeas corpus relief under 28 U.S.C. §2241 is available to anyone held "in custody in violation of the Constitution, laws or treaties of the United States." However, by law, habeas corpus relief pursuant to §2241 is limited to situations which are not covered by either 2254 or 2255. Title 28 U.S.C. §2255 provides "[A] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence."

Although filed pursuant to §2255, claim 2 seeks relief pursuant to §2241, because the movant is challenging the execution of his sentence by the Bureau of Prisons ("BOP"), claiming the BOP is refusing to allow him to participate in prison programs because

of his status as a deportable alien. Such a claim clearly challenges the execution of his sentence and must be raised by way of a §2241 petition, in the United States District Court in the District of North Carolina, having jurisdiction over Rivers Correctional Institution, since that is where jurisdiction lies because the movant is currently confined there. See Hadjuk v. United States, 764 F.2d 795, 796 (11th Cir. 1985)(A petition pursuant to 28 U.S.C. §2241 may only be brought in the court having jurisdiction over the petitioner or his place of incarceration.).

However, petitioner is cautioned that before he can seek extraordinary relief in federal court pursuant to §2241, he is required to fully exhaust available administrative remedies. See Gonzalez v. United States, 959 F.2d 211 (11th Cir. 1992); United States v. Lucas, 898 F.2d 1554 (11 Cir. 1990); United States v. Flanagan, 868 F.2d 1554, 1556 (11 Cir. 1989); United States v. Mathis, 689 F.2d 1364 (11 Cir. 1982). Thus, any federal petition filed in North Carolina will only be considered after the petitioner has exhausted his administrative remedies.[10] See Rosemond v. Menifee, 137 F.Supp.2d 270, 272 (S.D.N.Y.2000), citing, Rogers v. United States, 180 F.3d 349, 358 (1 Cir.1999). Failure to do so may result in dismissal of any action in North Carolina due to the failure to exhaust his administrative remedies. See generally United States v. Wilson, 503 U.S. 329, 335-36 (1992); Fraley v. United States Bureau of Prisons, 1 F.3d 924, 925 (9 Cir. 1993); United States v. Dowling, 962 F.2d 390, 393 (5 Cir. 1992).

_____

[10]An administrative remedy procedure for federal prisoners is provided at 28 C.F.R. §542.10-542.16. It is a three-level process. First the inmate files form BP-9 with the warden of his institution. If dissatisfied with the response, the inmate can appeal, using form BP-10, to the Regional Director. The inmate can further appeal using form BP-11, to the General Counsel in the Bureau of Prisons Central Office. Administrative remedies have not been exhausted until the inmate's claim has been filed at all levels and has been denied at all levels. See 28 C.F.R. §542.10.

## B.  <u>Construed as a §2255 Motion</u>

In his remaining claims, the movant challenges counsel's effectiveness as it relates to underlying criminal conviction under attack here. Those claims are properly brought by way of a §2255 motion.

In **claim 1,** movant asserts that he was denied effective assistance of counsel, where his lawyer failed to ask for a downward departure based on his status as a deportable alien. (Cv-DE#1:4). He relies on <u>United States v. Smith</u>, 27 F.3d 649 (D.C. Cir. 1994). <u>Smith</u> involves the failure to consider a downward departure **at the time of sentencing,** and as such, it is therefore inapplicable here, where movant is suggesting he is entitled to modification of his sentence. Furthermore, <u>Smith</u> is not binding on this court or the Eleventh Circuit.

In fact, cases from this Circuit have held that the collateral consequences that a defendant faces, because he is a deportable alien, generally do not support a downward departure. <u>See</u> <u>United States v. Lahoud</u>, 178 Fed.Appx. 926, 92 (11th Cir. 2006); <u>United States v. Maung</u>, 320 F.3d 1305, 1308 (11 Cir. 2003) (holding that a downward departure sentence could not properly be based on desire to shield defendant from immigration consequences of conviction, noting: "[n]o decision to which we have been directed, or that we have found, has upheld a downward departure based upon collateral consequences related directly or indirectly to the defendant's status as an alien"); <u>Estupinan v. United States</u>, Nos. 8:05-cr-240-T-24MSS, 8:06-cv-1866-T-24MSS, 2007 WL 778961, at *10 (M.D.Fla., March 9, 2007) (<u>citing</u> <u>United States v. Restrepo</u>, 999 F.2d 640, 644-47 (2 Cir. 1993) (case in which district court, in

order to support a downward departure, had relied on collateral consequences stemming from defendant's status as an alien which included ineligibility for assignment to lower-security facilities, post imprisonment detention pending removal, and removal itself, and the Second Circuit found that those collateral consequences were insufficient to support a downward departure and reversed the downward departure on direct appeal). Thus, movant has not demonstrated deficient performance or prejudice under <u>Strickland</u> arising from counsel's failure to bring this matter to the court's attention at sentencing.

To the extent the movant is suggesting that the "fast track" program, developed in the 1990's by certain U.S. attorney's Offices, should be extended to him, that argument also warrants no relief.

The "fast-track" program offer certain sentencing reductions in illegal reentry cases. This is not such a case. In the 1990's, certain United States Attorney's Offices developed early disposition or "fast-track" programs as a matter of prosecutorial discretion to deal with the increasingly large number of criminal immigration cases arising along the southwestern border of the United States. <u>See</u> <u>United States v. Campos-Diaz</u>, 472 F.3d 1278, 1279 n.1 (11th Cir. 2006), <u>cert.den'd</u>, 549 U.S. 1361 (2007). The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), Pub. L. No. 108-066, 117 Stat. 650, Apr. 30, 2003, harmonized the programs with the departure provisions of the federal Sentencing Guidelines. <u>Id</u>

More specifically, the PROTECT Act directed the Sentencing Commission to promulgate a statement by October 27, 2003,

authorizing downward sentence departures as part of an early disposition program authorized by the Attorney General and the United States Attorney. <u>See</u> Pub.L.No. 108-21, §401(m)(2)(B), 117 Stat. 650, 675 (2003). The program allows for a four-point downward departure on motion of the government pursuant to U.S.S.G. §5K3.1.2. <u>Id</u>. <u>See also</u> <u>United States v. Arevalo-Juarez</u>, 464 F.3d 1246, 1248 (11th Cir. 2006); <u>United States v. Martinez-Flores</u>, 428 F.3d 22,2 5 (1st Cir. 2006). The PROTECT Act, however, did not make fast-track programs mandatory for all districts. <u>See</u> <u>United States v. Castro</u>, 455 F.3d 1249, 1252 (11th Cir. 2006).

Movant is not eligible for the fast-track program, because it does not apply to offenses like movant's. <u>See</u> <u>United States v. Pitter</u>, 555 Fed.Appx. 910, 913 (11th Cir. 2014)(unpublished)(finding no error were court determined that Fast Track Program applies only to illegal re-entry cases). Regardless, even if applicable to the movant, no showing has been made here that the court would have further departed below the advisory guidelines determined at sentencing based on movant's status as a deportable alien. As will be recalled, the court already considered the advisory guidelines and statutory factors, imposing a sentence at the low end of the advisory guideline range, and denying the movant's motion for a downward variance. Thus, even had the issue been pursued, no showing has been made that the movant would have been entitled to participation in the Fast Track Program, much less that the court would have granted the request. Consequently, counsel was not deficient and movant suffered no prejudice arising from his attorney's failure to pursue this nonmeritorious claim at sentencing.

Further, even if, as suggested, there are sentencing

disparities between foreign nationals and U.S. citizens, the Eleventh Circuit has repeatedly held that the absence of a fast-track program does not create an unlawful sentencing disparity, as defined in 18 U.S.C. §3553(a)(6). See <u>United States v. Gomez</u>, 358 Fed.Appx. 53, 54 (11th Cir. 2009) (<u>citing</u>, <u>United States v. Castro</u>, 455 F.3d at 1252-53); <u>United States v. Arevalo-Juarez</u>, 464 F.3d 1246, 1250-51 (11th Cir. 2006). The Eleventh Circuit has also held that "the absence of a fast-track in a judicial district where a defendant is sentenced does not violate equal protection." <u>United States v. Campos-Diaz</u>, 472 F.3d 1278, 1279-80 (11th Cir. 2006).

In fact, the court has repeatedly made clear that it is "impermissible for the district court to consider disparities associated with early disposition programs in imposing ... sentence[.]" <u>Id</u>. at 1251. <u>See also</u> <u>United States v. Romo-Villalobos</u>, 674 F.3d 1246, 1251 (11th Cir. 2012)("[A]ny disparities created by fast-track programs do not fall within the scope of the 18 U.S.C. §3553(a) factors a district court considers in sentencing."); <u>United States v. Brown</u> 433 Fed.Appx. 708, 710 (11th Cir. 2011)(rejecting claim that because the Southern District of Florida does not have a fast-track program, defendant's higher sentence created an unwarranted sentencing disparity between him and similarly situated defendants in fast-track jurisdictions, which renders his sentence substantively unreasonable); <u>United States v. Bravo</u>, 271 F. Appx. 877, 879 and n.1 (11th Cir. 2008). The Eleventh Circuit has rejected in <u>Vega-Castillo</u> the argument that the Supreme Court's decision in <u>Kimbrough</u>[11] effectively overruled this precedent. See <u>United States v. Vega-Castillo</u>, 540

---

[11]<u>Kimbrough v. United States</u>, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)(holding that a district court possesses the discretionary authority to vary from the crack cocaine guidelines based upon a policy disagreement with the disparity between the sentences imposed for crack and powder cocaine offenses).

F.3d 1235, 1238-39 (11th Cir. 2008).[12] <u>See also</u> <u>United States v.</u> <u>Gomez-Carrillo</u>, 379 Fed.Appx. 902, 904 (11th Cir. 2010)(same) (unpublished).

If, in the alternative, movant suggests his counsel should have argued for a lower sentence because Movant is not a U.S. citizen and therefore ineligible for certain programs offered by the Federal Bureau of Prisons that claim also warrants no relief. "[A] sentencing court may not apply a downward departure to shield aliens from detrimental collateral consequences stemming from [their] status as an alien." <u>United States v. Saac</u>, 632 F.3d 1203, 1215 (11th Cir. 2011) (<u>citing</u> <u>United States v. Maung</u>, 320 F.3d 1305, 1308-10 (11th Cir.2003)).

Therefore, movant's arguments are devoid of merit. Counsel could not have been deficient for failing to make these nonmeritorious arguments at sentencing. For all of the foregoing reasons, relief is not warranted on claim one of this §2255 motion because the movant has not demonstrated either deficient performance or prejudice under <u>Strickland</u> arising from counsel's failure to pursue these nonmeritorious arguments at sentencing.

In **claim 3**, movant asserts that he was denied effective assistance of counsel, where his lawyer failed to raise certain issues at sentencing, including the claims raised herein, and the fact that the movant "was not guilty of anything" since there were

---

[12]<u>See also</u> <u>United States v. Vega-Castillo</u>, 548 F.3d 980, 981-82 (11th Cir. 2008)(Carnes, J., concurring)("If we are going to take a case en banc to reconsider our ... precedents in light of the <u>Kimbrough [v. United States</u>, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)] decision, it needs to be one where ... there is no apparent reason why the defendant would not have been offered the benefits of an early disposition program if he had been in a district with that kind of program.").

no drugs and he was not in a "submersible or submarine," but rather a "sinking ship. (Cv-DE##1:7-8). This claim is clearly refuted by the change of plea proceeding, is disingenuous at best, and at worst, borders on the perjurious. As will be recalled, the movant entered into a knowing and voluntary plea, agreeing that he was aboard a semi-submersible vessel, which as movant clearly admits, the government defined as a vessel that is sinking. Thus, to the extent he claims he is factually innocent, the claim warrants no relief here.

It is also well settled that the purpose of a §2255 motion is "to safeguard a person's freedom from detention in violation of constitutional guarantees," but "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." See Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11 Cir. 2014)(quoting Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). The Supreme Court has thus instructed that "'the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.'" Blackledge v. Allison, 431 U.S. at 73-74, 80 n.19, 97 S.Ct. at 1621-1622, 1630 n.19 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances").

It is also well settled that a knowing and voluntary guilty plea waives all non-jurisdictional errors, including non-jurisdictional defects and defenses. United States v. Brown, 752

F.3d 1344, 1347 (11 Cir. 2014). It also bears mentioning that "[A]s a matter of public policy, no court should tolerate claims of this kind, wherein the movant literally suggests in his §2255 filings that he lied during the Rule 11 hearing," "[N]or should such a movant find succor in claiming" as movant appears to suggest here generally, that "my lawyer told me to lie" or that he was otherwise threatened/coerced by counsel, the government, or the court into doing so. See Gaddis v. United States, 2009 WL 1269234, *5 (S.D.Ga.2009) (unpublished).

His allegations here are clearly refuted by his sworn declarations at the Rule 11 proceeding. "[S]uch casual lying enables double-waivered, guilty-plea convicts to feel far too comfortable filing otherwise doomed §2255 motions that consume public resources." See Irick v. United States, 2009 WL 2992562 at *2 (S.D. Ga. Sept. 17, 2009). Consequently, the movant is entitled to no relief in that his plea was knowing and voluntary, and his sentence was more than generous, lawful, and reasonable in light of the plea and the sentence exposure he faced if convicted at trial.

As will be recalled, at the Rule 11 proceeding, the movant acknowledged and agreed to the government's proffer of facts, with the exception that he and/or his codefendants were scuttling the semi-submersible vessel after being discovered by the Coast Guard. By his own admissions here and during the Rule 11 proceeding, movant acknowledges that the vessel was taking on water at the time the Coast Guard arrived on the scene. Further, the facts proffered by the government amply supports the offenses. Moreover, given the expert testimony of the government witness at sentencing, the movant has not provided any objective evidence here that he is factually innocent of the offenses. To the contrary, the evidence

more than amply supports his convictions. Movant's suggestion here, contrary to the representations made at the Rule 11 proceedings, is not only belied by the record, but is disingenuous and rejected by this court.

Notwithstanding, as previously stated, careful review of the entire record confirms that the movant's plea was knowing and voluntary, and his sentences lawfully entered. See United States v. Moriarty, 429 F.3d 1012, 1019 (2005); See generally United States v. Clayton, 447 Fed.Appx. 65 (11th Cir. 2011) (defendant received close assistance of counsel where, during plea colloquy, defendant "confirmed that he had discussed the charges, plea agreement, and guidelines with his lawyer, had been given adequate time to consult with his lawyer, and was satisfied with his lawyer's representation," and had not "overcome the strong presumption that statements made during the plea colloquy are true"); United States v. Price, 139 Fed.Appx. 253 (11th Cir. 2005) (no abuse of discretion in denying motion to withdraw guilty plea where plea hearing transcript "makes clear that the district court went through Price's rights with him, that Price understood those rights, that Price was satisfied with his counsel, and that—despite any factual disputes—Price persisted in pleading guilty" and where hearing transcript included defendant's confirmation "that he had consulted his counsel about how to proceed and that he had been 'extremely' satisfied with his counsel's representation").

When faced here with such self-serving allegations in which the movant "has every incentive to embellish," the plea transcript is dispositive on the movant's claim. Movant has not demonstrated here that the plea was anything other than knowing and voluntarily entered. His arguments are thus contradicted by his representations

and admissions at the Rule 11 change of plea proceedings. Thus, he has not demonstrated that counsel was deficient, much less that he was prejudiced arising from counsel's purported misadvise in suggesting that he plead guilty despite being factually innocent. In other words, to be entitled to relief under Strickland, the movant must demonstrate not only deficient performance, but that he suffered prejudice as a result of counsel's failure to pursue the claims as suggested.

Because the movant entered into a knowing and voluntary guilty plea, he was waiving any right to have counsel conduct further pretrial discovery or otherwise challenge the government's evidence, or to conduct legal research in pursuit of establishing a viable defense to the charges. Even had counsel done as suggested, movant has not shown that there was insufficient evidence upon which to support his convictions. Also, it is worth noting that the movant benefitted substantially from the plea, because the movant was facing up to 15 years imprisonment if convicted at trial, yet only received 51 months imprisonment as a result of his plea. Moreover, the court may not have granted a reduction to movant's base offense level based on acceptance of responsibility if he had insisted on proceeding to trial and were convicted thereafter.

It is well settled that a habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). He must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere

legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11 Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8 Cir.2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2 Cir. 2000)(citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him).

To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. No such showing has been made here, and in fact, the movant's protestations of innocence are refuted by the record. Under the totality of the circumstances present here, the movant is entitled to no relief on this basis. Further, he also cannot fault counsel for failing to pursue this nonmeritorious claim. Therefore, no deficient performance or prejudice under Strickland has been established arising from counsel's failure to conduct further investigation or pursue further pretrial strategies, nor was counsel ineffective for suggesting that the movant plead guilty when he was, in fact, innocent. Relief is therefore not warranted on any of the arguments presented in claim 3.

It is finally worth mentioning briefly that the movant also appears to suggest in relation to **claim 1** that he sought relief by way of a §2255 motion because his attorney never informed him that he had a right to prosecute a direct appeal. (Cv-DE#1:4). First,

even if the court assumes, without deciding, that counsel was deficient in this regard, the movant cannot demonstrate prejudice because, at the conclusion of sentencing, the court clearly advised the movant and his codefendants that they had fourteen days to file a notice of appeal. Therefore, movant has not demonstrated prejudice under Strickland and is entitled to no relief on this claim.

Notwithstanding, to the extent he means to argue that counsel did not consult with him about an appeal, that claim likewise warrants no relief. The Strickland standard applies to a claim that counsel rendered ineffective assistance by failing to file a notice of appeal or consult with the defendant about an appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). If successful, the remedy for that type of ineffectiveness is an out-of-time appeal. Gomez-Diaz v. United States, 433 F.3d 788, 793 (11th Cir. 2005). Further, counsel who disregards a defendant's instruction to file a notice of appeal renders ineffective assistance. Flores-Ortega, 528 U.S. at 477. "At the other end of the spectrum," a defendant who instructs his counsel to not file a notice of appeal cannot later complain that his counsel rendered ineffective assistance by following his instruction. Id.

For a case in which a defendant has not instructed his counsel one way or the other, whether counsel rendered ineffective assistance "is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." Id. at 478. "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's

wishes." Id. It requires more than just asserting the view that an appeal will not succeed. Thompson v. United States, 504 F.3d 1203, 1207 (11th Cir. 2007).

If counsel consulted with the defendant, he renders ineffective assistance only by failing to follow his client's instruction to file a notice of appeal. Flores-Ortega, 528 U.S. at 478. If counsel did not consult with the defendant, "the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. Counsel must consult with the defendant about an appeal if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

To determine whether counsel had a duty to consult with the defendant about an appeal, a court must consider all of the information that counsel had known or should have known. Id. A "highly relevant" factor is "whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. Even if the defendant had pleaded guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an

interest in an appeal." <u>Id</u>.

A defendant may reasonably demonstrate to counsel that he is interested in appealing by expressing unhappiness with his sentence compared to those of his codefendants, <u>Thompson</u>, 504 F.3d at 1207, or by asking his counsel after sentencing, "What's next? What can we do now?" and then appearing "crushed" upon hearing that nothing could be done, <u>Palacios v. United States</u>, 453 Fed.Appx. 887, 889 (11th Cir. 2011).

In contrast, in <u>Devine v. United States</u> and <u>Otero v. United States</u>, the Eleventh Circuit held that counsel does not have a duty to consult about an appeal where such expressions are absent and the defendant receives a sentence at the bottom of the United States Sentencing Guidelines range after pleading guilty and waiving the right to appeal his sentence. <u>Devine</u>, 520 F.3d 1286, 1288-89 (11th Cir. 2008); <u>Otero</u>, 499 F.3d 1267, 1270-71 (11th Cir. 2007). This was the case here. Movant admits herein that no consultation was had. **(Cv-DE#1:4)**. However, none was required especially where the movant received more than the benefit of the bargain by pleading guilty. In other words, he received a sentence well below the statutory maximum, received a reduction to his base offense level for acceptance of responsibility, and then received a sentence at the low end of the advisory guideline range, when the court imposed two concurrent terms of 51 months imprisonment. As will be recalled, the movant was facing a 15-year statutory maximum term of imprisonment as to each offense. He actually received a significantly lesser sentence.

If counsel rendered ineffective assistance either in failing to file a notice of appeal as instructed or in failing to determine

his client's wishes, prejudice is presumed insofar as the defendant does not need to identify any arguably meritorious grounds for appeal. Gomez-Diaz, 433 F.3d at 793. But, in accordance with Strickland, he still must show that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484. "As with all applications of the Strickland test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case." Id. at 485. A "highly relevant" factor is whether, again, there had been nonfrivolous grounds for appeal or the defendant promptly expressed a desire to appeal. Id.

"[A]lthough showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed, a defendant's inability to specify the points he would raise were his right to appeal reinstated will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." Id. at 486 (internal quotation marks and citation omitted). Here, the movant nowhere states that his counsel failed to do as instructed and file a notice of appeal. The movant also has not identified here any nonfrivolous grounds for an appeal. This too inures to a finding that, not only was no adequate consultation had, as suggested, but movant failed to express any desire whatsoever of his intent to prosecute a direct appeal. Consequently, movant's counsel did not render ineffective assistance of counsel by failing to file a notice of appeal or to consult with the movant about an appeal. Moreover, nowhere does the movant allege, let alone demonstrate, that he expressed a desire to appeal.

Where, as here, by movant's own admissions, no request was made, the Court must determine only whether, considering all of the information that movant had known or should have known, was there a reason to think that either a rational defendant would want to appeal or movant reasonably demonstrated to counsel that he was interested in doing so. See Flores-Ortega, 528 U.S. at 480. Given the procedural history narrated above, the movant has not alleged, let alone demonstrated, that a rational defendant would want to appeal, nor has he established that he demonstrated or otherwise made known to counsel that he was interested in doing so.

In light of all the information that movant had known or should have known, a rational defendant, in the movant's position, would not have wanted to appeal, and movant did not reasonably demonstrate to counsel that he was interested in doing so. The evidence of the offense of conviction was overwhelming. Acknowledging the truth of the facts forming the essential elements of the charged crime, movant pleaded guilty as charged. As a result, he received a three-level reduction for timely acceptance of responsibility, and the court sentenced the movant to a low end guideline sentence, imposing a total term of 51 months imprisonment, well below the 15-year statutory maximum he faced if convicted at trial.

In doing so, the movant limited the scope of potentially appealable pre-sentencing issues and a higher sentence. See Flores-Ortega, 528 U.S. at 480 (highly relevant factor in determining duty to consult is whether conviction follows guilty plea because guilty plea reduces scope of potentially appealable issues); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (by pleading guilty, defendant waives all non-jurisdictional

challenges to constitutionality of his conviction, and only attack on plea's voluntary and knowing nature can be sustained). Thus, movant's guilty plea demonstrates and confirms his desire to end the judicial proceedings. See Flores-Ortega, 538 U.S. at 480 (highly relevant factor in determining duty to consult is whether conviction follows guilty plea because guilty plea may indicate defendant's desire for an end to the case).

In short, considering the relevant factors, as the Eleventh Circuit has found in Devine and Otero, a rational defendant would not have desired an appeal, and movant did not demonstrate to counsel, nor has he demonstrated here, that he had an interest in an appeal. Id. Without either, and without having instructed counsel to file a notice of appeal, he has not satisfied his burden of demonstrating that counsel was constitutionally ineffective in failing to file a notice of appeal or consult with him about doing so. Thus, denial of §2255 relief on this claim is warranted.[13]

Finally, it should further be noted that this court has considered all of the petitioner's arguments raised in his §2255 motion. (Cv-DE#1). See Dupree v. Warden, 715 F.3d 1295 (11th Cir. 2013)(citing Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992)). For all of his arguments, movant has failed to demonstrate he is entitled to vacatur of his conviction and sentence. Thus, to the extent a precise argument, subsumed within his ground for relief,

---

[13] If the movant attempts to raise new argument in support of this claim in objections to the Report of the undersigned, the district court should reject its discretion and deny the claim. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp.2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(qouting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)); see also, Daniel v. Chase Bank USA, N.A., 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(citing Williams v. McNeil, 557 F.3d 1287 (11th Cir. 2009).

was not specifically addressed herein, the claim was considered and found to be devoid of merit, warranting no discussion herein.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that movant's guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as appears to now be suggested. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[14] See also Hill v. Lockhart, supra; Strickland v. Washington, supra. 466 U.S. 668 (1984).

## VII. Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the remaining claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See Schriro v. Landrigan, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). See also Townsend v. Sain, 372 U.S. 293, 307 (1963); Holmes v. United States, 876

---

[14]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

F.2d 1545, 1553 (11th Cir. 1989), *citing*, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VIII. <u>Certificate of Appealability</u>

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). <u>See</u> 28 U.S.C. §2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 129 S.Ct. 1481 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. §2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding,

if petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## IX. **Recommendations**

Based on the foregoing, it is recommended that movant's motion be DENIED; that no certificate of appealability issue; that final judgment be entered; and, that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 30th day of October, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Ernesto Estupinan-Gonzalez, <u>Pro Se</u>
     Reg. No. 08978-104
     Rivers Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 630
     Winton, NC 27986

     Yvonne Rodriguez-Schack, AUSA
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132
     Email: <u>Yvonne.Rodriguez-Schack@usdoj.gov</u>